**DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| **GREAT LAKES INSURANCE S.E. and HDI GLOBAL SPECIALTY S.E.,** | ) ) ) | |
| Plaintiffs/Counter-Defendants, | ) ) | |
| v. | ) ) | Civil Action No. 2019-0039 |
| **SUNSHINE SHOPPING CENTER, INC. d/b/a SUNSHINE MALL,** | ) ) ) ) | |
| Defendant/Counter-Plaintiff. | ) ) ) | |
| **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON subscribing to POLICY NOS. B1230GP00647B17 and B1230GP00647C17,** | ) ) ) ) ) ) | |
| Plaintiffs/Counter-Defendants, | ) ) | |
| v. | ) ) ) | Civil Action No. 2020-0033 |
| **SUNSHINE SHOPPING CENTER, INC. d/b/a SUNSHINE MALL,** | ) ) ) ) | |
| Defendant/Counter-Plaintiff. | ) ) ) | |

**Attorneys:
Charlotte K. Perrell, Esq.,
Chad C. Messier, Esq.,**
St. Thomas, U.S.V.I.
**Daniel G. Sanders, Esq.,**
Chadds Fords, PA

> *For Plaintiffs/Counter-Defendants Great Lakes Insurance S.E. and HDI Global Specialty S.E.*

**Neal R. Novak, Esq.,**
Chicago, IL

> *For Plaintiffs/Counter-Defendants Certain Underwriters at Lloyd's, London subscribing to Policy Numbers B1230GP00647B17 and B1230GP00647C17*

**Nathan J. Mirocha, Esq.,**
Christiansted, U.S.V.I.
**Stuart Sobel, Esq.,**
**B. Michael Clark, Esq.,**
Coral Gables, FL
    *For Defendant/Counter-Plaintiff Sunshine Shopping Center, Inc.*

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Plaintiffs Great Lakes Insurance S.E. and HDI Global Specialty S.E.'s ("Great Lakes/HDI"), and Plaintiffs Certain Underwriters at Lloyd's, London subscribing to Policy Numbers B1230GP00647B17 and B1230GP00647C17's ("Underwriters") (collectively, "Plaintiffs") Motions and Incorporated Memoranda to "Strike Defendant's Exhibits to its Expert Affidavit Offered in Support of its Opposition to Plaintiffs' *Daubert* Motion" ("Motions to Strike") (1:19-cv-0039, Dkt. No. 256; 1:20-cv-0033, Dkt. No. 132) in the above-captioned cases; Defendant Sunshine Shopping Center, Inc.'s ("Defendant" or "Sunshine") Responses in Opposition to Plaintiffs' Motions to Strike Exhibits to Defendant's Expert Affidavit ("Responses in Opposition") (1:19-cv-0039, Dkt. No. 260; 1:20-cv-0033, Dkt. No. 134); and Plaintiffs' Replies (1:19-cv-0039, Dkt. No. 261; 1:20-cv-0033, Dkt. No. 135).[1] For the reasons that follow, the Court will deny Plaintiffs' Motions to Strike, but will provide Plaintiffs other relief as set forth herein.

### I.    BACKGROUND

These cases arise out of four insurance contracts ("Policies"): one entered into by Great Lakes Insurance S.E. and Sunshine; one entered into by HDI Global Specialty S.E. and Sunshine;

---

[1] The cases here, 1:19-cv-0039 and 1:20-cv-0033, were initially one case. However, Underwriters agreed that they would file a separate lawsuit (1:20-cv-0033) to resolve "procedural gridlock" during discovery (1:19-cv-0039, Dkt. No. 131 at 3). The two cases were subsequently consolidated "for purposes of case management and discovery only." (1:19-cv-0039, Dkt. No. 132 at 2).

and two entered into by Underwriters and Sunshine. (1:19-cv-0039, Dkt. No. 228 at 1; 1:20-cv-0033, Dkt. No. 104 at 1).[2] Through these Policies, Plaintiffs provided Defendant with commercial property insurance for Defendant's property located at 1 Estate Cane, Frederiksted, St. Croix (the "Property"). (1:19-cv-0039, Dkt. No. 228 at 1; 1:20-cv-0033, Dkt. No. 104 at 1). Great Lakes/HDI insured Sunshine's Property against all risks of direct physical loss or damage up to a limit of $18,200,000, but each policy contains a "sub-limit" of $3.25 million on losses from "any one occurrence in respect of Windstorm after deductible." (1:19-cv-0039, Dkt. No. 228 at 1-2). Underwriters' Policies are structured differently. One Policy "covers all risks of direct physical loss or damage" with a $3.25 million limit "on any one occurrence including Windstorm after deductible" (the "Primary Policy"), while the other is an "excess" policy, with up to $14.95 million in coverage for "any one occurrence [in] excess" of $3.25 million and "excludes coverage for loss or damage due to windstorm" (the "Excess Policy"). (1:20-cv-0033, Dkt. No. 104 at 1-2).

In August 2019, Great Lakes/HDI filed their lawsuit (1:19-cv-0039) under "the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and [Fed. R. Civ. P.] 57," seeking "a determination of the parties' rights and obligations" for the two Policies they entered into, covering the period July 1, 2017 to July 1, 2018. (1:19-cv-0039, Dkt. No. 1 at 1-2). Great Lakes/HDI allege that Defendant's Property suffered damage or loss caused by Hurricane Maria (a "Windstorm") on or about September 19-20, 2017, and the damages Defendant claims exceed "the applicable Windstorm sublimit of $3.25 million." *Id.* at 5-6. Based on this alleged shortfall in coverage, Great Lakes/HDI assert that Defendant is characterizing its claim "as being caused by perils not subject to the Windstorm sublimit." *Id.* at 6. Underwriters similarly argue that they have exhausted their

---

[2] Certain statements in this Background section are taken from Plaintiffs' Statements of Undisputed Material Facts filed in support of their Motions for Summary Judgment, which Defendant has not disputed. The Motions for Summary Judgment are pending.

3

obligation to pay Defendant under the Primary Policy, because, *inter alia*, they "paid their share of policy limits for the windstorm loss," and Defendant "has not submitted a claim for vandalism." (1:20-cv-0033, Dkt. No. 102 at 1). Further, Underwriters argue that Defendant's theory that a "vandalized overhead roll-up door was the substantial contributing factor resulting in the roof deck failure and subsequent widespread interior damage is not supported in fact or in law." *Id.* at 2.

Sunshine, for its part, maintains that the damage the insured Property sustained on September 19-20, 2017 "resulted from the combination of vandalism (the breach of an overhead roll-up door) and Hurricane Maria, together." (1:19-cv-0039, Dkt. No. 250 at 2; 1:20-cv-0033, Dkt. No. 124 at 2). Sunshine claims that each "was a substantial contributing factor in causing the damage and neither would have, by itself, caused the extensive damage—which included the detachment of the roof deck from the building envelope." (1:19-cv-0039, Dkt. No. 250 at 2; 1:20-cv-0033, Dkt. No. 124 at 2).

In the instant Motions to Strike, Plaintiffs seek to strike Exhibit B, Exhibit D, and corresponding statements related thereto from the affidavit (1:19-cv-0039, Dkt. Nos. 244, 244-3, 244-5; 1:20-cv-0033, Dkt. Nos. 117, 117-3, 117-5) offered in support of Sunshine's "Memorandum of Law in Opposition to *Daubert* Motion to Exclude Reports, Opinions and Testimony of Amy Peevey" ("Opposition to *Daubert* Motions").[3] Sunshine's proffered expert witness, Amy Peevey, authored a "Damage Causation Report" ("Expert Report") (1:19-cv-0039, Dkt. Nos. 244-1, 244-2; 1:20-cv-0033, Dkt. Nos. 117-1, 117-2), and Sunshine "intends [to] have Peevey testify at the bench trial of this case to explain the engineering conditions that caused the roof deck [of the Property] to detach from the Mall's building envelope during Hurricane Maria."

---

[3] The Court notes that Great Lakes/HDI seek to strike paragraphs 19 and 31 from the affidavit (1:19-cv-0039, Dkt. No. 256 at 1), while Underwriters seek to strike paragraphs 19 *through* 31 from the affidavit (1:20-cv-0033, Dkt. No. 132 at 1).

4

(1:19-cv-0039, Dkt. No. 243 at 3; 1:20-cv-0033, Dkt. No. 116 at 3). However, Plaintiffs filed *Daubert* Motions seeking to exclude Ms. Peevey's report, opinions, and testimony on a number of grounds. (1:19-cv-0039, Dkt. No. 238; 1:20-cv-0033, Dkt. No. 113). Sunshine filed an opposition to those Motions, together with an affidavit ("First Affidavit") from Ms. Peevey in support of its opposition. (1:19-cv-0039, Dkt. Nos. 243, 244; 1:20-cv-0033, Dkt. Nos. 116, 117). According to Sunshine, Exhibit B is "a detailed graphic of Hurricane Maria's path in relation to the location of the Defendant's Mall," and Exhibit D "is spreadsheet PDF files showing the wind speed calculations," the results of which Ms. Peevey included in her Expert Report. (1:19-cv-0039, Dkt. No. 260 at 2-3; 1:20-cv-0033, Dkt. No. 134 at 2-3). Both Exhibit B and Exhibit D are mentioned in and attached to Ms. Peevey's First Affidavit. (1:19-cv-0039, Dkt. No. 244 at 5, 8; 1:20-cv-0033, Dkt. No. 117 at 5, 8).

Plaintiffs argue that Exhibit B, Exhibit D, and the corresponding statements related thereto in Ms. Peevey's First Affidavit (1:19-cv-0039, Dkt. No. 244; 1:20-cv-0033, Dkt. No. 117) should be stricken because the Scheduling Order in the cases required Defendant to provide copies of their expert opinions, pursuant to Fed. R. Civ. P. 26(a)(2), on or before June 1, 2021, and all expert depositions under Fed. R. Civ. P. 26(a)(2) were required to be completed on or before August 20, 2021. (1:19-cv-0039, Dkt. No. 256 at 1-2). Plaintiffs state that Defendant timely provided Ms. Peevey's Expert Report on June 1, 2021, and Ms. Peevey's deposition took place on August 16, 2021, in compliance with the Scheduling Order. *See id*. at 2. However, Plaintiffs assert that at no time prior to Defendant's service of its Opposition to *Daubert* Motions on November 9, 2021 had Exhibits B and D "ever been disclosed to Plaintiffs." *Id.* Rather, Plaintiffs argue that Defendant "made a conscious decision not to provide the calculations and work papers." *Id.* at 5. Plaintiffs

5

further maintain that "this is not new information nor is it a change in the available information that is subject to supplementation under the Rules." *Id.*

According to Plaintiffs, Defendant "should not be permitted to engage in a 'rolling disclosure'" (*id.* at 6), and these exhibits and statements relying on them should be stricken, pursuant to Fed. R. Civ. P. 37(c)(1), because Defendant failed to provide them on or before June 1, 2021, as required by Fed. R. Civ. P. 26(a)(2) and this Court's Scheduling Order (*id.* at 1-2). Plaintiffs allege that they were harmed by this failure because they: (1) "were denied the opportunity to fully cross-examine Ms. Peevey at her deposition"; and (2) "expended significant time and expense then and after in preparing their *Daubert* Motion," which is fully briefed. *Id.* at 5 n.4. Plaintiffs assert in their *Daubert* Motions that Ms. Peevey was asked "multiple questions" during her deposition about her calculations but "was unable to answer no less than 11 times." (1:19-cv-0039, Dkt. No. 239 at 6). When asked at her deposition why the spreadsheet (Exhibit D) was not disclosed to Plaintiffs, Ms. Peevey responded that she did not receive a subpoena for the spreadsheet. (1:19-cv-0039, Dkt. No. 239-3 at 9). Plaintiffs argue in their *Daubert* Motions that Ms. Peevey "is not qualified to calculate wind speed and direction and her opinions as to wind speed and direction should be excluded" based on her inability to answer and because others prepared the calculations. (1:19-cv-0039, Dkt. No. 239 at 6-7). For the same reasons and because the calculations were not provided, Plaintiffs further argue in their *Daubert* Motions that the calculations are unreliable, in that they cannot be tested or explained. *Id.* at 9-10, 14-17, 19.

Sunshine responds that it is not engaged in a rolling disclosure and there is no prejudice to Plaintiffs. (1:19-cv-0039, Dkt. No. 260 at 3; 1:20-cv-0033, Dkt. No. 134 at 3). Defendant argues that "[o]nly after Plaintiffs misunderstood and misrepresented Ms. Peevey's testimony did she develop" Exhibit B—the graphic of Hurricane Maria's path—which was presented to "respond to

and oppose" Plaintiffs' *Daubert* Motions and has now been disclosed. (1:19-cv-0039, Dkt. No. 260 at 3-4; 1:20-cv-0033, Dkt. No. 134 at 3-4). Because these cases do not have trial dates, Defendant also argues that Plaintiffs "have ample time to prepare for effective cross examination in advance of trial." (1:19-cv-0039, Dkt. No. 260 at 4; 1:20-cv-0033, Dkt. No. 134 at 4). Defendant supports its Responses in Opposition with an affidavit ("Second Affidavit") from Ms. Peevey that is attached to its Responses in Opposition. (1:19-cv-0039, Dkt. No. 260-1; 1:20-cv-0033, Dkt. No. 134-1).

As to Exhibit D, Defendant asserts that Ms. Peevey "included tables in her Report with the facts and data relied on to perform those calculations." (1:19-cv-0039, Dkt. No. 260 at 3; 1:20-cv-0033, Dkt. No. 134 at 3). Defendant also argues that Exhibit D "was not consciously withheld"; that the calculations themselves are not "neatly described or identified as 'facts or data'"; and that Exhibit D is not an exhibit that will be used to summarize or support Ms. Peevey's opinions. (1:19-cv-0039, Dkt. No. 260 at 4-5; 1:20-cv-0033, Dkt. No. 134 at 4-5). Defendant maintains that Ms. Peevey "summarized and supported her opinions concerning those calculations in the tables, charts, graphs, and materials included with her Report." (1:19-cv-0039, Dkt. No. 260 at 5; 1:20-cv-0033, Dkt. No. 134 at 5). Defendant also argues that Ms. Peevey did not understand that she was required to provide her spreadsheet calculations, which Defendant supports with Ms. Peevey's statements to that effect in her Second Affidavit. (1:19-cv-0039, Dkt. Nos. 260 at 5, 260-1 at 2; 1:20-cv-0033, Dkt. Nos. 134 at 5, 134-1 at 2).

Finally, Defendant argues—in the alternative—that if a Rule 26 violation exists there is no prejudice to Plaintiffs, and Defendant offered a "cure." (1:19-cv-0039, Dkt. No. 260 at 6; 1:20-cv-0033, Dkt. No. 134 at 6). On November 23, 2021, Defendant offered Plaintiffs the opportunity to depose Ms. Peevey a second time. (1:19-cv-0039, Dkt. Nos. 258 at 2, 260 at 3, 5; 1:20-cv-0033,

Dkt. Nos. 125 at 2, 134 at 3, 5). Further, Defendant stated it would permit Plaintiffs to "use whatever they learn in support of their Daubert Motion." (1:19-cv-0039, Dkt. No. 260 at 5; 1:20-cv-0033, Dkt. No. 134 at 5). Defendant argues that this offer of "a supplemental deposition of Ms. Peevey" was well in advance of any trial and before the *Daubert* hearing in these cases. (1:19-cv-0039, Dkt. No. 260 at 6; 1:20-cv-0033, Dkt. No. 134 at 6). Thus, there would have been "no resulting interruption of the trial." (1:19-cv-0039, Dkt. No. 260 at 6; 1:20-cv-0033, Dkt. No. 134 at 6).

## II. DISCUSSION

### A. Defendant's Duty to Disclose under Rules 26(a)(2)(B) and 26(e)

Federal Rule of Civil Procedure 26(a)(2) provides, in relevant part, that each party must disclose to the other parties the identity of any expert witness it may use at trial, and the "disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony." Fed. R. Civ. P. 26(a)(2)(B). The report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

*Id.* Each party must make these disclosures according to court order. Fed. R. Civ. P. 26(a)(2)(D).

This Court has stated that "Rule 26(a) serves to ensure that 'expert reports [ ] include "how" and "why" the expert reached a particular result, not merely the expert's conclusory opinions.'" *Muhsin v. Pac. Cycle, Inc.*, No. 2010-060, 2012 WL 2062396, at *3 (D.V.I. June 8, 2012) (citing *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 n.6 (7th Cir.1998)). "[A]n expert opinion must

'set forth facts' and, in doing so, outline a line of reasoning arising from a logical foundation." *Id.* (quoting *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010)). Specifically, the requirements found at Rules 26(a)(2)(B)(i)-(ii) "exist so that an opposing party has an opportunity to fully evaluate the expert's opinion 'in order to avoid an ambush at trial.'" *Id.* (quoting *R.C. Olmstead, Inc.*, 606 F.3d at 271).

Further, a party that wishes to supplement an expert's report must follow the requirements of Federal Rules of Civil Procedure 26(e), which states that the duty to supplement or correct arises when the party "learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). However, courts have "'repeatedly rejected attempts to . . . "supplement[]" an expert report with a "new and improved" expert report' in an opposition brief." *New Jersey Dep't of Env't Prot. v. Amerada Hess Corp.*, No. CV156468FLWLHG, 2019 WL 4052431, at *4 (D.N.J. Aug. 28, 2019) (quoting 8A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2049.1 (3d ed. 2019)). For example, "[c]aselaw establishes that [an expert's] declaration should be stricken if it contains new opinions or information which is contradictory to that set forth in the expert report." *Pritchard v. Dow Agro Scis.*, 263 F.R.D. 277, 284 (W.D. Pa. 2009). In contrast, a declaration "need not be stricken if it is merely 'an elaboration of and consistent with an opinion/issue previously addressed' in the expert report." *Amerada Hess Corp.*, 2019 WL 4052431, at *4 (quoting *Pritchard*, 263 F.R.D. at 284-85). Thus, "[w]hile the applicable case law prohibits an expert from using rebuttal as a 'do-over' of an original report, courts have refrained from 'automatically exclud[ing] anything an expert could have included in his or her original report.'" *Id.* (quoting *Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004)).

The Joint Scheduling Order in these cases required Defendant Sunshine to name its experts and provide copies of their opinions, as required by Fed. R. Civ. P. 26(a)(2), on or before June 1,

9

2021. (1:19-cv-0039, Dkt. No. 149 at 3; 1:20-cv-0033, Dkt. No. 26 at 3). It is not disputed by the parties that Defendant Sunshine provided its Expert Report on June 1, 2021, and that the Expert Report contained neither Exhibit B nor Exhibit D.

1. **Exhibit B**

As to Exhibit B—the detailed graphic of Hurricane Maria's path in relation to the Property—the record shows that this graphic did not exist at the time Defendant provided Plaintiffs with the Expert Report. Ms. Peevey states in her Second Affidavit—which was offered in opposition to Plaintiffs' Motions to Strike—that she created Exhibit B after her deposition to address misrepresentations and misunderstandings regarding her deposition testimony. (1:19-cv-0039, Dkt. No. 260-1 at 2; 1:20-cv-0033, Dkt. No. 134-1 at 2). Because Sunshine was not required to disclose that which did not exist, and which could not have been part of the Expert Report, the Court finds that Sunshine did not violate Rule 26(a)(2) as it relates to the disclosure of Exhibit B.

Further, the Court finds that Sunshine presented Exhibit B to "respond to and oppose" Plaintiffs' *Daubert* Motions. *See* (1:19-cv-0039, Dkt. No. 260 at 3-4; 1:20-cv-0033, Dkt. No. 134 at 3-4). As Plaintiffs acknowledge, "this is not new information nor is it a change in the available information that is subject to supplementation under the Rules." (1:19-cv-0039, Dkt. No. 256 at 5). Exhibit B is a graphic illustrating Ms. Peevey's conclusions as to the wind direction at the Property at certain points in time during Hurricane Maria. This information—*i.e.*, wind direction at the Property at certain points in time—was included in a different format in the Expert Report, *i.e.*, in Table 3. (1:19-cv-0039, Dkt. No. 244-1 at 14; 1:20-cv-0033, Dkt. No. 117-1 at 14). Consistent with the analysis employed by various courts in considering declarations attached to responses to *Daubert* motions, Exhibit B and the associated statements in Ms. Peevey's First Affidavit do not expand the Expert Report, but illustrate information already in the Report in

response to Plaintiffs' *Daubert* Motions. Thus, the Court finds that Sunshine did not improperly supplement the Expert Report under Rule 26(e). *See, e.g., Pritchard*, 263 F.R.D. at 285-87 (holding that an expert's declaration attached to an opposition to a *Daubert* motion did not violate discovery rules because it did not "contain new or contradictory opinions but offer[red] elaboration of his initial opinions and rebut[ted] the opinions in the defense experts' reports"); *Amerada Hess Corp.*, 2019 WL 4052431, at *4 (finding that formal supplementation was unnecessary for an expert's supplemental declaration that was attached to oppositions to *Daubert* motions because the declaration was "not an expansion of the expert report; it merely offer[red] explanations for why the conclusions in the expert report remain[ed] unchanged").

In view of the foregoing, the Court finds no basis for striking Exhibit B and therefore rejects Plaintiffs' arguments to the contrary.

   2. **Exhibit D**

The Court reaches a different conclusion as to Exhibit D. Specifically, the Court finds that Exhibit D contains calculations that Sunshine was required to provide to Plaintiffs. Defendant argues that the calculations are not "neatly described or identified as 'facts or data.'" (1:19-cv-0039, Dkt. No. 260 at 4; 1:20-cv-0033, Dkt. No. 134 at 4). This does not mean, however, that they are not actually facts or data. Even assuming that "technically" one could make such an argument, the spreadsheet calculations nonetheless served as a basis for Ms. Peevey's opinions. For example, Table 5 of the Expert Report contains the internal pressure coefficients for the Property in three situations. (1:19-cv-0039, Dkt. No. 239-2 at 19-20; 1:20-cv-0033, Dkt. No. 114-3 at 19-20). According to Ms. Peevey's deposition testimony, these internal pressure coefficients are outputs from the spreadsheet calculations. *See* (1:19-cv-0039, Dkt. No. 228-14 at 34-35) (explaining that the "as-built with no breaches" internal pressure coefficient in Table 5 was "the output of the

spreadsheet calculation that was made"). Thus, under Rule 26(a)(2) Defendant was required to provide the calculations contained in Exhibit D that serve as a basis for Ms. Peevey's conclusions in the Expert Report. *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (requiring the expert report to contain "a complete statement of all opinions the witness will express and the basis and reasons for them"); *Muhsin*, 2012 WL 2062396, at *3 ("Rule 26(a) serves to ensure that 'expert reports [ ] include "how" and "why" the expert reached a particular result, not merely the expert's conclusory opinions.'") (quoting *Salgado*, 150 F.3d at 742 n.6 (7th Cir.1998)).

In sum, the Court finds that Sunshine violated Fed. R. Civ. P. 26(a)(2)(B) by failing to include in the Expert Report the calculations contained in Exhibit D that served as a basis for the Expert Report's analysis and conclusions.

### B. The Consequences of Defendant's Violation of Rule 26(a)(2)(B)

In light of Sunshine's failure to provide the calculations that Exhibit D contains as required by Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, the Court must determine whether Exhibit D and the corresponding statements in Ms. Peevey's First Affidavit should be stricken as requested by Plaintiffs. Under Federal Rule of Civil Procedure 37(c)(1), if a party fails to provide information as required by Rule 26(a), the party "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In addition, or in the alternative, the court may order other appropriate sanctions, including payment of reasonable expenses, such as attorney's fees, that are caused by the failure. *Id.* "The burden of proving substantial justification or harmlessness lies with the non-producing party." *Norfolk S. Ry. Co. v. Pittsburgh & W. Virginia R.R.*, No. 2:11-CV-1588-TFM, 2015 WL 4377766, at *2 (W.D. Pa. July 15, 2015) (quoting *Frederick v. Hanna,* No. CIV.A.05–514, 2007 WL 853480, at *4 (W.D. Pa. Mar. 16, 2007)) (internal quotations omitted).

In a case involving Fed. R. Civ. P. 37(c)(1), the Third Circuit recognized that courts have defined "substantial justification" as "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with [a] disclosure [requirement]." *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 140 n.23 (3d Cir. 2009) (quoting *Tolerico v. Home Depot*, 205 F.R.D. 169, 175 (M.D. Pa. 2002)).  Under Fed. R. Civ. P. 16(f)(2), which also contains the "substantial justification" standard, a Third Circuit panel has held that "[s]ubstantial justification exists where there is a 'genuine dispute concerning compliance.'" *Rorrer v. Cleveland Steel Container*, 564 F. App'x 642, 644 (3d Cir. 2014) (quoting *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 241 (3d Cir. 2007)); *see also Tolerico*, 205 F.R.D. at 175-76 ("The test of substantial justification is satisfied if 'there exists a genuine dispute concerning compliance.'"). Further, "[a] party's misconduct is harmless if it involves an honest mistake, coupled with sufficient knowledge by the other party of the material that has not been produced." *Tolerico*, 205 F.R.D. at 176 (citation omitted).

If a party does not meet its burden of showing substantial justification or harmlessness, the Court has discretion to impose sanctions under Rule 37(c)(1). *See Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 156 (3d Cir. 1995) (noting that Rule 37 was written in mandatory terms but holding that "[t]he imposition of sanctions for abuse of discovery under [Rule 37] is a matter within the discretion of the trial court" (quoting *Orjias v. Stevenson*, 31 F.3d 995, 1005 (10th Cir. 1994)). "To determine whether a discovery violation warrants excluding the associated evidence, courts in the Third Circuit consider" five factors. *Baptiste v. Rohn*, No. CV 2013-0104, 2016 WL 1273884, at *3 (D.V.I. Mar. 29, 2016). Those factors—referred to as the *Pennypack* factors—are:

> (1) "the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified" or the excluded evidence would have been offered;

13

> (2) "the ability of that party to cure the prejudice"; (3) the extent to which allowing such witnesses or evidence would "disrupt the orderly and efficient trial of the case or of other cases in the court"; (4) any "bad faith or willfulness in failing to comply with the court's order"; and (5) the importance of the excluded evidence.

*Id.* (citing *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012)). "The importance of the evidence is often the most significant factor." *Norfolk Southern*, 2015 WL 4377766, at *2 (quoting *ZF Meritor, LLC,* 696 F.3d at 298) (internal quotations omitted). Further, "the exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *In re Jacoby Airplane Crash*, No. CIV. 99-6073 (HAA), 2007 WL 559801, at *9 (D.N.J. Feb. 14, 2007) (quoting *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997)) (internal quotations omitted).

As to whether Defendant was substantially justified in failing to provide Exhibit D, the Court finds that a reasonable person would not believe that the parties could differ as to whether Defendant was required to provide the calculations contained in Exhibit D as part of its Expert Report. While Ms. Peevey may not have understood that the calculations underlying her opinions must be disclosed, Rule 26(a)(2) clearly requires it, and Sunshine is obligated to abide by the Rules. The Court finds there is no genuine dispute as to whether Ms. Peevey and Sunshine complied with the requirements of Rule 26(a)(2).  They did not.

Further, the Court finds that the failure was not harmless. During Ms. Peevey's deposition, Plaintiffs clearly did not have sufficient knowledge of Exhibit D's content. As discussed above, Plaintiffs inquired about the calculations on which Ms. Peevey based her opinions multiple times in her deposition, and Ms. Peevey was unable to answer many of the questions posed.

Because Sunshine has not met its burden to show that its failure to provide Exhibit D was substantially justified or harmless, the Court has discretion to impose sanctions under Rule

14

37(c)(1). Plaintiffs request that Exhibit D be stricken. To determine whether Plaintiffs' requested sanction is appropriate, the Court will examine the relevant factors, noted above.

As to the first factor, the Court finds that Plaintiffs were surprised to learn of the existence of the spreadsheet at Ms. Peevey's deposition, during which the existence of the spreadsheet was disclosed.[4] Plaintiffs were prejudiced because they could not meaningfully question Ms. Peevey about the information that is contained in Exhibit D during her August 16, 2021 deposition. This factor weighs in Plaintiffs' favor.

Regarding the second factor, the Court finds that the prejudice can be cured by permitting Plaintiffs to take Ms. Peevey's deposition a second time with Exhibit D, which Defendant has offered. *See In re Jacoby*, 2007 WL 559801, at *11 (denying a motion to exclude a witness from testifying at trial in part because there was more than six months remaining before trial and "the prejudice to Plaintiffs [could] be cured by allowing them to take [the witness's] deposition"). As to the third factor, trial has not yet been scheduled in these cases, so allowing Exhibit D will not significantly disrupt the orderly and efficient trial of these cases. These two factors weigh in Defendant's favor.

Turning to the fourth factor—bad faith or willfulness—Plaintiffs argue that Sunshine "made a conscious decision not to provide the calculations and work papers." (1:19-cv-0039, Dkt.

---

[4] Plaintiffs should not have been surprised, however, by the introduction of the spreadsheet as Exhibit D to Ms. Peevey's First Affidavit. With the deposition having been concluded, Plaintiffs knew of the existence of Exhibit D. Indeed, according to the deposition transcript, at least one counsel for Plaintiffs had considered requesting the spreadsheet that Ms. Peevey had referenced. (1:19-cv-0039, Dkt. No. 239-3 at 9; 1:20-cv-0033, Dkt. No. 114-4 at 9). Apparently, the spreadsheet was not requested by Plaintiffs, nor was it produced by Defendant prior to the filing of the Opposition to *Daubert* Motions. The Court notes that after Ms. Peevey's deposition and before Plaintiffs filed their *Daubert* Motions, the parties could, and should, have resolved—either among themselves or with the Court's assistance—Defendant Sunshine's failure to provide Exhibit D. Gamesmanship usually does not serve to advance the goal of achieving the "just, speedy, and inexpensive determination" of proceedings. *See* Fed. R. Civ. P. 1.

No. 256 at 5). However, Sunshine argues that Ms. Peevey did not know she was required to provide her calculations, which it supports with Ms. Peevey's statement to that effect in her Second Affidavit together with her assertion that she included tables in the Expert Report "with the facts and data relied on to perform those calculations." (1:19-cv-0039, Dkt. No. 260-1 at 2; 1:20-cv-0033, Dkt. No. 134-1 at 2). Further, Defendant Sunshine offered Ms. Peevey for a second deposition.

The Court notes that it is not only Ms. Peevey's obligation to comply with Rule 26(a)(2); it is also Sunshine's. *See ZF Meritor, LLC*, 696 F.3d at 297 ("Under Federal Rule of Civil Procedure 26(a)(2), a party is required to disclose an expert report containing 'a *complete* statement of all opinions the witness will express and the basis and reasons for them.'") (citing Fed. R. Civ. P. 26(a)(2)(B)(i)) (emphasis in original). Nonetheless, the evidence in the record is devoid of the kind of conduct that would support a finding of bad faith or willfulness by Defendant. *Compare Vorhes v. Mittal Steel USA, Inc.*, No. CIV.A. 06-1130, 2009 WL 959579, at *4 (W.D. Pa. Apr. 6, 2009) (holding that the late disclosure of an expert by plaintiff's counsel was willful because "it was in clear violation of numerous Court Orders, counsel was aware of [the expert's report] . . . for approximately two years and counsel [had] proffered no substantial justification for the failure"); *Klatch-Maynard v. Sugarloaf Twp.*, No. 3:06-CV-0845, 2011 WL 2006424, at *5 (M.D. Pa. May 23, 2011) (finding plaintiffs' failure to provide expert reports constituted "willful failure to comply" because three and a half years elapsed since the deadline for the expert reports and plaintiffs failed to offer "substantial justification for their inability to comply"). Further, the record does not support a finding of "willful deception" or "flagrant disregard" by Defendant in its failure to provide Exhibit D, which would support excluding Exhibit D and the accompanying statements. *See In re Jacoby,* 2007 WL 559801, at *9 (quoting *Konstantopoulos*, 112 F.3d at 719). Sunshine

and Ms. Peevey did not, for example, hide the existence of Exhibit D during Ms. Peevey's deposition. Accordingly, this factor weighs in Defendant's favor.

As to the fifth factor—the importance of the evidence—the calculations were used in the Expert Report's analysis as to the cause, or causes, for the failure of the Property's roof deck. The cause of the roof deck failure, and whether it was due to Hurricane Maria, or vandalism coupled with Hurricane Maria, is a critical issue in these cases. Thus, the calculations are important to Defendant Sunshine's arguments in these cases. This factor also weighs in Defendant's favor.

Because all but one of the factors weigh in Defendant's favor and excluding evidence is an extreme sanction, the Court will deny Plaintiffs' Motions to Strike. However, Defendant's failure was not harmless, and therefore the Court will grant Plaintiffs other sanctions that are narrowly tailored to the harm that Defendant caused. *See Perez v. Great Wolf Lodge of the Poconos LLC*, No. 3:12-CV-01322, 2017 WL 34697, at *8 (M.D. Pa. Jan. 3, 2017) (holding that defendants' conduct "was not entirely harmless" and imposing "an appropriate sanction narrowly tailored to the harm" defendants' conduct caused). Under Rule 37(c), in lieu of striking Exhibit D and the accompanying statements in Ms. Peevey's affidavit, the Court will permit Plaintiffs to conduct a second deposition of Ms. Peevey if they so choose. Further, the Court will require Sunshine to pay Plaintiffs all "reasonable expenses, including attorney's fees" incurred as a result of having to depose Ms. Peevey a second time. Fed. R. Civ. P. 37(c)(1)(A); *see Cody v. Phil's Towing Co.*, 247 F. Supp. 2d 688, 696-97 (W.D. Pa. 2002) (denying plaintiff's motion to strike under Rule 37(c)(1) but requiring defendant to pay for "additional discovery costs and attorney's fees incurred as a result of having to reopen or reexamine areas of discovery further placed at issue" because of defendant's failure to disclose information under Rule 26(e)). Plaintiffs shall also have the

opportunity to supplement their *Daubert* Motions if a second deposition is held, and they deem such supplementation appropriate.[5]

### III.   CONCLUSION

For the foregoing reasons, the Court will deny Plaintiffs' Motions to Strike (1:19-cv-0039, Dkt. No. 256; 1:20-cv-0033, Dkt. No. 132). The Court will, however, grant other sanctions against Sunshine as set forth herein for its failure to produce Exhibit D as part of the Expert Report. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED**.

Date:   March 03, 2022                                    _____/s/_____
                                                                        WILMA A. LEWIS
                                                                        District Judge

---

[5] The Court will not order the payment of costs or fees incurred by Plaintiffs in supplementing the *Daubert* Motions. As previously noted, this Court is of the view that this issue should have been resolved prior to the filing of the *Daubert* Motions. *See supra* note 4.