## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **GREAT LAKES INSURANCE S.E. and HDI GLOBAL SPECIALTY S.E.,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs/Counter-Defendants,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2019-0039** |
| | ) | |
| **SUNSHINE SHOPPING CENTER, INC. d/b/a SUNSHINE MALL,** | ) | |
| | ) | |
| | ) | |
| **Defendant/Counter-Plaintiff.** | ) | |
| _____ | ) | |
| | ) | |
| **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON subscribing to POLICY NOS. B1230GP00647B17 and B1230GP00647C17,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Plaintiffs/Counter-Defendants,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2020-0033** |
| | ) | |
| **SUNSHINE SHOPPING CENTER, INC. d/b/a SUNSHINE MALL,** | ) | |
| | ) | |
| | ) | |
| **Defendant/Counter-Plaintiff.** | ) | |
| _____ | ) | |

**Attorneys:**
**Chad C. Messier, Esq.,**
**Charlotte K. Perrell, Esq.,**
St. Thomas, U.S.V.I.
**Daniel G. Sanders, Esq.,**
Chadds Fords, PA
> *For Plaintiffs/Counter-Defendants Great Lakes Insurance S.E. and HDI Global Specialty S.E.*

**Neal R. Novak, Esq.,**
Chicago, IL
> *For Plaintiffs/Counter-Defendants Certain Underwriters at Lloyd's, London subscribing to Policy Numbers B1230GP00647B17 and B1230GP00647C17*

**Nathan Mirocha, Esq.,**
Christiansted, U.S.V.I.
**Barry Michael Clark, Esq.,**
**Stuart Sobel, Esq.,**
Coral Gables, FL
> *For Defendant/Counter-Plaintiff Sunshine Shopping Center, Inc.*

## MEMORANDUM OPINION AND ORDER

**Lewis, District Judge**

THIS MATTER comes before the Court on Defendant Sunshine Shopping Center, Inc.'s ("Sunshine") "Motion[s] to Reconsider Order Granting *Daubert* Motion to Exclude Reports, Opinions, and Testimony of Amy Peevey" (19-cv-00039, Dkt. No. 295 ("Mot."); 20-cv-00033, Dkt. No. 168) ("Motions for Reconsideration");[1] Plaintiffs Great Lakes Insurance S.E. ("Great Lakes") and HDI Global Specialty S.E.'s ("HDI"), and Plaintiffs Certain Underwriters at Lloyd's, London subscribing to Policy Numbers B1230GP00647B17 and B1230GP00647C17's ("Underwriters," collectively with Great Lakes and HDI, "Plaintiffs") Response thereto (19-cv-00039, Dkt. No. 302; 20-cv-00033, Dkt. No. 175); Sunshine's Reply (19-cv-00039, Dkt. No. 305; 20-cv-00033, Dkt. No. 178); and Plaintiffs' Supplemental Brief (19-cv-00039, Dkt. No. 309; 20-cv-00033, Dkt. No. 182).[2] For the reasons that follow, the Court will deny Sunshine's Motions for Reconsideration.

## I.      BACKGROUND

This case concerns insurance disputes that arose between Sunshine and its insurers—Plaintiffs—following damage that the Sunshine Shopping Center ("Mall") sustained when Hurricane Maria struck the United States Virgin Islands on September 19-20, 2017.[3] Plaintiffs filed *Daubert* Motions seeking to exclude the testimony of Sunshine's proffered expert, Amy

---

[1] Sunshine filed identical Motions for Reconsideration in each of the two related cases, and the parties' briefing in each case is identical.

[2] By Order dated October 26, 2022, the Court granted the parties leave to each file a supplemental brief of no more than ten pages in support of the primary arguments raised in their principal briefing with citations to the transcribed record. This opportunity for supplemental briefing was provided to the parties because the transcript of the *Daubert* hearing was not available when the parties' principal briefs were filed. Plaintiffs filed a supplemental brief (19-cv-00039, Dkt. No. 309; 20-cv-00033, Dkt. No. 182); Sunshine did not.

[3] The Court assumes the parties' familiarity with the relevant facts, which have been detailed at length in the Court's September 30, 2022 Memorandum Opinion. (19-cv-00039, Dkt. No. 166 ("*Daubert* Memo. Op."); 20-cv-00033, Dkt. No. 293).

Peevey ("Peevey"), and the Court granted those Motions on September 30, 2022, excluding Peevey's testimony in its entirety. (19-cv-00039, Dkt. Nos. 113, 114, 165, 166 ("*Daubert* Memo. Op."); 20-cv-00033, Dkt. Nos. 238, 239, 292, 293). Sunshine then filed the instant Motions for Reconsideration, requesting that the Court "reconsider or limit the scope of its September 30, 2022 Memorandum Opinion." (Mot. at 1). For the reasons discussed below, Sunshine's Motion for Reconsideration will be denied.

## II.    APPLICABLE LEGAL PRINCIPLES

The Federal Rules of Civil Procedure do not expressly provide for motions for reconsideration. However, Rule 7.3 of the Local Rules of Civil Procedure permits parties to request that the Court reconsider a decision based on "(1) an intervening change in controlling law; (2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice." LRCi 7.3(a). Rule 7.3 further provides that any motion for reconsideration "shall state whether it is based on LRCi 7.3(a)(1), (2), or (3) and shall concisely identify . . . the relevant change in controlling law, the new evidence, or the clear error. LRCi 7.3(b). Counsel is also required to certify "that at least one of such grounds for reconsideration . . . [is] present in [the] case." LRCi 7.3(c).

Here, Sunshine's Motion does not identify which of the three grounds specified in Rule 7.3 it believes to be present in this case, nor did Sunshine's counsel include the required certification in the Motion.[4] Because a review of Sunshine's Motion reveals that Sunshine does not identify any intervening change in controlling law that might affect the Court's September 30, 2022 ruling on Plaintiffs' *Daubert* Motions, nor any evidence newly discovered since that time, Sunshine must therefore demonstrate "clear error" or "manifest injustice" in the Court's

---

[4] Indeed, Sunshine makes no mention of Rule 7.3 in its Motion, instead relying on Rule 46 of the Federal Rules of Civil Procedure, which governs objections to court rulings and orders and is irrelevant. Sunshine's counsel made the required certification in Sunshine's Reply, after Plaintiffs' Response correctly identified Rule 7.3 as the appropriate authority.

September 30, 2022 ruling. LRCi 7.3(a)(3). This is a heavy burden because reconsideration "'is an extraordinary remedy,' [and] litigants cannot use such motions as 'a vehicle for registering disagreement with the court's initial decision, or for rearguing matters already addressed by the court, or for raising arguments that could have been raised before but were not.'" *President v. Gov't of Virgin Islands*, No. 17-CV-00046, 2023 WL 2185722, at *1 (D.V.I. Feb. 23, 2023) (quoting *Addie v. Kjaer*, 50 V.I. 914, 916-17 (D.V.I. 2008)).

In the context of a motion for reconsideration, manifest injustice "means that the Court overlooked some dispositive factual or legal matter that was presented to it," or that the Court committed an error that is "direct, obvious, and observable." *Greene v. Virgin Islands Water & Power Auth.*, No. 06-CV-00011, 2012 WL 4755061, at *2 (D.V.I. Oct. 5, 2012) (citations and internal quotation marks omitted). Further, clear error exists only if, "after reviewing the evidence," the Court is "left with a definite and firm conviction that a mistake has been committed." *Oberti v. Bd. of Educ.*, 995 F.2d 1204, 1220 (3d Cir.1993).

### III.   DISCUSSION

Plaintiffs' *Daubert* Motions sought to exclude Peevey's testimony on multiple bases, including her qualifications and the reliability of her methodology. (*See Daubert* Memo. Op. at 13-14 (summarizing the grounds on which Plaintiffs sought to exclude Peevey's testimony)). Many of Plaintiffs' arguments centered on Peevey's qualifications to extrapolate—from pre-existing weather data (the "NOAA data")—the windspeed and wind direction at the Mall during Hurricane Maria, as well as the reliability of Peevey's methodology insofar as it relied on these extrapolations. *Id.* As described in the Court's September 30, 2022 Memorandum Opinion, the Court concluded that Peevey was not qualified to perform these extrapolations because, in addition to never having done so before, "such extrapolations by an expert [like Peevey] is, by all indications, an unparalleled departure from the norm that … such extrapolations fall exclusively within the province of meteorologists." *Id.* at 15. The Court also

agreed with Plaintiffs that Peevey's incorporation of these extrapolations into her analysis rendered her methodology and ultimate opinions unreliable, because the extrapolations were themselves unreliable, and because Peevey's ultimate opinions "*necessarily* rel[ied] on [those] extrapolations." *Id.* at 20 (emphasis added). Accordingly, the Court found that Sunshine had "failed to carry its burden to show by a preponderance of the evidence that Peevey is qualified to offer her proposed testimony and that the methodology through which she reached her opinions is reliable." *Id.* at 27. The Court therefore granted Plaintiffs' Daubert Motions on these two independent grounds and excluded Peevey's testimony in its entirety. *Id.*

In its Motions for Reconsideration, Sunshine argues, in essence, that the Court's ruling was overbroad insofar as the Court "blanketly precluded Peevey from testifying at the trial of this [case]," thereby "throw[ing] the baby out with the bath water." (Mot. at 2). Specifically, Sunshine argues that: (1) "the complete exclusion of Peevey's testimony at trial erroneously excludes Peevey's analyses, opinions and conclusions [that] do not rely on extrapolation or trigonometry," which Sunshine argues are "entirely appropriate"; and (2) by excluding Peevey's testimony in its entirety, the Court's ruling inappropriately "grant[ed] relief beyond the relief sought by [Plaintiffs]" because, according to Sunshine, Plaintiffs did not seek to exclude Peevey's testimony insofar as that testimony was *not* based on her (unreliable) windspeed and wind direction extrapolations. *Id.* On these grounds, Sunshine argues that:

> Peevey should be permitted to use, albeit without extrapolation, the wind speed and direction actually measured at Sandy Point, the uplift force she calculated from that speed and direction, and compare that uplift force to the calculated uplift capacity of the roof deck. From that comparison, Peevey should be allowed to testify to her conclusion that "the overhead door and roof deck failures were not the result of storm damage from Hurricane Maria alone" based on her determination that the force exerted by the hurricane, alone, did not exceed the as-built uplift capacity of the roof deck or the overhead door. She should also be permitted to testify to her inspection and evaluation of the physical evidence and historic building performance . . . [and that] the service life of the [Mall], at the time of its construction, was at least 75 years[.]"

*Id.* at 4-5.

Sunshine's attempt to salvage elements of Peevey's testimony on grounds that those elements were unaffected by Peevey's unreliable extrapolations ignores the extent to which Peevey's ultimate opinions necessarily depend upon her extrapolated data. And Sunshine's argument that Plaintiffs did not seek to exclude the entirety of Peevey's proffered testimony— but rather only her testimony and opinions that relied on her windspeed and wind direction extrapolations—fails for the same reason.

In essence, Peevey's key conclusions were: (1) that the force Hurricane Maria exerted on a certain component of the Mall—the "roof deck"—would have been insufficient to cause that component to fail had another component—the "overhead door"—not already been damaged at the time of the hurricane; and (2) that the pre-existing damage to the overhead door therefore served as a "but-for" cause of the collapse of the roof deck and led to widespread interior damage in the Mall. (*See Daubert* Memo Op. at 9 (summarizing Peevey's conclusions)). As detailed in the Court's September 30, 2022 Memorandum Opinion, Peevey reached this conclusion, in essence, by: (1) measuring the "as-built" capacity of various Mall components, including the overhead door and roof deck; (2) extrapolating the windspeed and wind direction at the Mall from the NOAA data in order to calculate the force the hurricane would have exerted on these components in various circumstances (*e.g.,* both where the overhead door had preexisting damage and where it did not); and (3) calculating, based on this extrapolated data, that the force the hurricane exerted on the overhead door and roof deck would have been insufficient to exceed either component's "as built" capacity (and thereby cause them to fail) had the overhead door not already been damaged at the time of the hurricane. *See id* at 6-9 (summarizing the "key components" of Peevey's methodology).

As the Court explained at length in its September 30, 2022 Memorandum Opinion, both Peevey's conclusions—that the force Hurricane Maria exerted on the Mall was insufficient to cause the overhead door breach and roof deck failure, and that the pre-existing damage to the

6

overhead door was a but-for cause of the roof deck failure—are dependent upon her calculations as to the amount of force that the Hurricane alone would have exerted on various Mall components if (a) the overhead door was fully intact at the time of the hurricane, or (b) if the overhead door was already damaged at the time of the hurricane. *Id.* at 6-9, 22-27. Further, the Court explained that Peevey's force calculations—through which she reached her conclusions—necessarily relied on the figures that Peevey extrapolated for windspeed and direction at the Mall. *See id.* at 25 (noting "Defendant does not dispute that Peevey's force calculations are based upon her windspeed and wind direction extrapolations"). The Court found that Peevey is not qualified to extrapolate from the NOAA data, and that her methodology was unreliable because her force calculations—and, in turn, her ultimate conclusions—necessarily relied on those extrapolations. (*See Daubert* Memo Op. at 22-27).

Sunshine now argues that Peevey should be permitted to testify that the *non-extrapolated* NOAA data supports her first conclusion—that the force Hurricane Maria exerted on the Mall was insufficient to cause the overhead door breach and roof deck failure—without also testifying that the non-extrapolated data supports her second conclusion (that the pre-existing damage to the overhead door was a but-for cause of the roof deck failure). (Mot. at 4-5). Sunshine additionally argues that Peevey should be permitted to testify as to the "as-built" capacity of certain mall components and regarding the Mall's "service life"—testimony that would arguably be necessary for Peevey to explain that non-extrapolated data supports the conclusion that the force Hurricane Maria exerted on the Mall was insufficient to cause the overhead door breach and roof deck failure. *Id.*

Sunshine's arguments overlook three crucial realities.

**First**, both Sunshine and Peevey expressly presented Peevey's expert testimony and conclusions as dependent upon her extrapolations. (*See Daubert* Memo Op. at 25 (quoting Dkt. No. 278 (Def. Resp.) at 4 ("*All* of Peevey's modelling regarding the weather condition

experienced at the [Mall] was generated using [the extrapolations she made based upon] the extensive available recorded information [as to windspeed and wind direction]." (emphasis added) (quotation omitted)), *and* Dkt. No. 244 (Peevey First Aff.) at ¶ 19 ("Using the linear extrapolation method described in my report as well as the historical data for wind direction, I was able to determine the wind condition at the Mall during Hurricane Maria[.]"))). Sunshine's contention that Plaintiffs did not explicitly seek to exclude Peevey's testimony insofar as her testimony did not incorporate extrapolated data therefore amounts to nothing but an illogical claim that Plaintiffs should have challenged—and that this Court should have tailored its opinion to address—a methodology that Sunshine's expert did not actually employ.

**Second**, at no point in these proceedings has either Sunshine or Peevey previously contended that using the *non*-extrapolated NOAA data leads to reliable conclusions consistent with Sunshine's theory of the case. This fact was emphasized in the Court's Memorandum Opinion, in which the Court noted that "nowhere in Peevey's 58-page Report or two supporting affidavits does she suggest that, based on her expertise, her force calculations would have been accurate or reliable had she *not* utilized the extrapolated windspeed and wind direction data that she generated"—that is, that her conclusions would have been accurate or reliable had she used non-extrapolated data. (*Daubert* Memo Op. at 26).

**Third**, in addition to not affirmatively asserting that use of the non-extrapolated data would have resulted in accurate or reliable conclusions, the existing record strongly indicates that Peevey and Sunshine do not so view the non-extrapolated data. Again, this fact was emphasized in the Court's Memorandum Opinion. There, the Court noted that, "in her deposition testimony, Peevey acknowledged that she could not have reached the conclusions that she did if she had not extrapolated the windspeed and wind direction herself and instead simply utilized the non-extrapolated NOAA data from Sandy Point." *Id.* The Court specifically cited to two excerpts of Peevey's deposition testimony in which Peevey acknowledged as

much. *See id.* (citing Dkt. No. 275-1 (Peevey Second Dep. Tr. Excerpts) at 18:23-19:7 ("We utilized the Sandy Point information [*i.e.,* the non-extrapolated data] and determined that it *did not explain*—did not result in pressures that exceeded the roof deck capacity" (emphasis added)), and *id.* at 77:12-19 ("[The non-extrapolated windspeed] didn't produce the same result [as the extrapolated data]. It doesn't explain the actual roof deck failure.")). In context, it is clear that, by these statements, Peevey meant that the non-extrapolated data could not account for the roof deck failure *even if the overhead door had sustained pre-existing damage*, as Sunshine claims.[5]

The upshot of this is that Peevey was proffered and presented to the Court to testify as to the *cause* of the roof deck failure, and in so doing she utilized a methodology that relied on extrapolated data. Given the Court's finding that Peevey was not qualified to extrapolate from the existing data, and that the extrapolated methodology employed was not reliable, Sunshine now seeks to salvage some portion of Peevey's testimony by arguing that she should be allowed to testify about what *did not cause* the roof deck failure, and in so doing to rely on data which she rejected in arriving at her initial conclusions. Sunshine's contention that Peevey should now be permitted to use the previously rejected non-extrapolated data to show that the hurricane did not exert enough force on the overhead door and roof deck to cause those components to fail thus represents an attempt to present expert testimony, the reliability of

---

[5] When utilizing the extrapolated data, Peevey concluded that the roof deck would only have failed had the overhead door already been damaged at the time of the hurricane, *i.e.*, that the roof deck would not have failed had the overhead door not already been damaged. Therefore, when Peevey says that the non-extrapolated data does not lead to the "same result" as the extrapolated data—she is necessarily referring to the fact that the non-extrapolated data could not account for the roof deck failure even if the overhead door had sustained pre-existing damage.

which has not been established.[6] Sunshine has had more than ample time to develop its expert opinion. It does not now get another chance.[7]

Reconsideration is not a vehicle for advancing arguments that could have been presented earlier but were not. *Cabrita Point Dev., Inc. v. Evans*, 52 V.I. 968, 975 (D.V.I. 2009). And it is certainly not a vehicle for parties to raise arguments that they opted not to pursue in the first instance. The Court will therefore not permit Peevey—at this stage of the proceedings—to re-perform her calculations.

It follows that there is also no basis to permit Peevy to testify regarding the other areas that Sunshine specifies, such as her measurements of the "as-built" capacity of certain Mall components or her knowledge of the Mall's "service life." (Mot. at 2-3, 5). While it is true that Peevey's measurements of components' "as-built" capacity did not themselves rely on Peevey's extrapolations, these measurements would be useful to a jury only if Peevey were also permitted to testify to her related conclusions, which the Court has excluded. *See Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) ("[An] expert's testimony must be relevant for the purposes of the case and must assist the trier of fact."); *Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (3d Cir. 2000) ("Admissibility . . . depends in part upon

---

[6] As the Court noted in its *Daubert* Opinion, when called to opine that the hurricane was not itself the cause of the overhead door breach, Peevey's calculation was "again based on her windspeed and wind direction extrapolations." (*Daubert* Memo. Op. at 9).

[7] The Court notes that Sunshine first disclosed Peevey's expert report to Plaintiffs in June 2021, and Plaintiffs deposed Peevey in August 2021. Plaintiffs then filed their *Daubert* Motions seeking to exclude Peevey's testimony in October 2021, in response to which Sunshine annexed additional data that Sunshine claimed Peevey used to form her expert opinions. Plaintiffs then moved to strike that data, arguing that Sunshine was obligated to disclose that data before Peevey's deposition. While the Court agreed with Plaintiffs that Sunshine acted improperly in failing to timely disclose that data, it did not strike the data. Instead, the Court ordered Sunshine to make Peevey available for a second deposition at which Plaintiffs could question Peevy with regards to the data. (*See* 19-cv-00039, Dkt. No. 270 (Mar. 3, 2022 Memo. Op.) at 12; 20-cv-00033, Dkt. No. 144 (Mar. 3, 2022 Memo. Op.) at 12). Peevey was deposed a second time in March 2022. This prolonged process provided Sunshine and Peevey with ample opportunity to fully present Peevey's opinions.

the proffered connection between the scientific research or test to be presented and particular disputed factual issues in the cases.") (internal quotation marks omitted). Likewise, Sunshine has provided the Court with no reason to think that Peevey's expert testimony regarding the building's "service life" would somehow be useful to a jury absent any reference to her excluded opinions.

In view of the foregoing, the Court finds that there is not "clear error" or a "manifest injustice" in its September 30, 2022 ruling. Indeed, the Court notes that Sunshine has offered no authority to support its argument that its challenge to the Court's ruling could amount to clear error or manifest injustice. The Court will therefore deny Sunshine's Motions for Reconsideration.

## IV.   CONCLUSION

For the reasons discussed, the Court concludes that its September 30, 2022 ruling on Plaintiffs' *Daubert* Motions was not "clear error" or a "manifest injustice," and that Rule 7.3 does not otherwise entitle Sunshine to the relief it seeks here.

Accordingly, it is hereby

**ORDERED** that Sunshine's Motions for Reconsideration (19-cv-00039, Dkt. No. 295 ("Mot."); 20-cv-00033, Dkt. No. 168) are **DENIED**.

**SO ORDERED.**

Date:   July 18, 2023

_____/s/_____
WILMA A. LEWIS
District Judge

11