**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| **GREAT LAKES INSURANCE S.E.,** | **:** | **CIVIL ACTION** |
| **HDI GLOBAL SPECIALTY S.E., and** | **:** | |
| **CERTAIN UNDERWRITERS AT** | **:** | |
| **LLOYDS, LONDON SUBSCRIBING** | **:** | |
| **TO POLICY NUMBERS** | **:** | |
| **B1230GP00647B17 AND** | **:** | |
| **B1230GP00647C17** | **:** | |
| | **:** | |
| **v.** | **:** | **NO. 1:19-39** |
| | **:** | |
| **SUNSHINE SHOPPING CENTER,** | **:** | |
| **INC., D/B/A SUNSHINE MALL** | **:** | |

## MEMORANDUM

**KEARNEY, J.**                                                                              **August 12, 2026**

The Sunshine Mall allegedly suffered millions of dollars in damage when Hurricane Maria struck St. Croix. The Mall suffered specific damage to its roof. The Mall purchased four "all-risk" insurance policies which it hoped would provide coverage for losses caused by Hurricane Maria's windstorm damage. It sought coverage. The three Insurers on the four policies agreed in part and shared payments up to $3,250,000 for the one windstorm damage occurrence but not beyond. The Insurers claim either an exclusion or limitation in the purchased policies precludes further recovery. The Mall counters pre-existing vandalism to an overhead roller shutter door greatly increased the amount of damage inflicted by Hurricane Maria. The parties disputed whether the Mall must prove the exclusion or limitation does not apply. The parties did not cite, and we could not find, authority from the Virgin Islands Supreme Court on who bears the burden of showing the

applicability of an exclusion or limitation in an "all-risks" insurance policy. We engaged in a *Banks* analysis requiring we find the burden to prove an exclusion or limitation remains with the insurers.

We deny the Insurers' motion for summary judgment seeking a declaratory judgment based on disputed material facts as to additional loss covered in the all-risks policies. We find genuine issues of material fact as to whether vandalism to the Mall's door occurred before the storm and whether the vandalism caused the roof damage. We will resolve those fact questions at trial.

### I.   Adduced facts presented on summary judgment record.[1]

Sunshine Shopping Center, Inc. operates an enclosed shopping mall on St. Croix known as the Sunshine Mall. The Mall purchased four insurance policies from three insurers to protect its property in the event of a loss as defined in each policy. It purchased policies from Great Lakes Insurance S.E., HDI Global Specialty S.E., and Certain Underwriters at Lloyd's London insuring it from July 1, 2017 through July 1, 2018.[2] Three of the purchased policies provided coverage for the Mall for damages it sustained from Windstorms.[3] Each policy defined Windstorm as "a tropical cyclone with minimum sustained winds near the surface of [thirty-nine] miles per hour or more as at the National Meteorological Office nearest the Covered Location which is damaged . . . ."[4] But the coverage otherwise varied on each policy.

#### *The Mall purchases all-risks policies from Great Lakes and HDI Global.*

The Mall purchased policies from Great Lakes and HDI Global which covered "All Risks of Direct Physical Loss or Damage" up to $18,200,000 for "any one occurrence."[5] The Great Lakes and HDI Global policies provided coverage of "All Risks" including damages the Mall might sustain from a Windstorm.[6] But both policies included a limitation capping coverage for Windstorm damages at $3,250,000.[7] Great Lakes "subscribed to 30% of 100% of the Sum Insured" and HDI Global "subscribed to 25% of 100% of the Sum Insured."[8]

### *The Mall purchases all-risks policies from Certain Underwriters.*

The Mall also purchased two policies from Certain Underwriters to cover "All Risks of Direct Physical Loss or Damage."[9] The first policy covered "All Risks of Direct Physical Loss or Damage" including Windstorm damages up to $3,250,000 for "any one occurrence."[10] The first policy is the Mall's "Primary" policy through Certain Underwriters.[11] The second policy covered "All Risks of Direct Physical Loss or Damage" up to $14,950,000 for "any one occurrence" in excess of $3,250,000.[12] This second policy is the Mall's "Excess" policy through Certain Underwriters.[13] The Certain Underwriters excess policy excludes coverage for Windstorm damages.[14] Certain Underwriters subscribed to the remaining 45% of the Sum Insured.[15]

### *Hurricane Maria strikes St. Croix.*

Hurricane Maria struck St. Croix on September 19 and 20, 2017.[16] The Mall asserts—and the Insurers dispute—vandals damaged one of its overhead roller shutter doors on September 19, 2017 before Hurricane Maria hit.[17] The Mall discovered "extensive damage" to its roof and damage to its interior after Hurricane Maria.[18] The Mall notified its insurance broker Marshall & Sterling of its losses.[19] The Mall estimates it sustained over $3,250,000 in damages.[20]

### *The Insurers paid the Mall up to their policies' Windstorm limitations and exclusion.*

Great Lakes, HDI Global, and Certain Underwriters made three payments to the Mall: (1) a $250,000 interim payment, (2) a $1,229,375.31 second interim payment, and (3) a $1,770,624.69 final payment.[21] These payments totaled $3,250,000 and exhausted Great Lakes's and HDI Global's Windstorm sub-limits and exhausted the primary Certain Underwriters policy's occurrence limit.[22] Great Lakes and HDI Global notified the Mall it would not make payments under its policy above its respective portions of the $3,250,000 Windstorm limit for Windstorm damages.[23]

*The Insurers seek a coverage declaratory judgment.*

Great Lakes and HDI Global sued the Mall asking we declare they satisfied their obligations to the Mall by paying their portions of the Windstorm sub-limits.[24] Certain Underwriters also sued the Mall asking we declare it satisfied its obligations to the Mall by paying its portion of the primary policy's occurrence limit.[25]

## II.    Analysis

All three Insurers moved for summary judgment on their claims.[26] Judge Lewis noted the Insurers' and the Mall's arguments presented a novel question regarding the burdens of proof under Virgin Islands law for all-risks insurance policies and ordered them to submit additional briefing on this issue on May 1, 2024.[27] Chief Judge Molloy reassigned both cases to us in March 2026.[28] We now decide the question of Virgin Islands common law Judge Lewis raised in her May 1, 2024 Order and deny summary judgment for the Insurers.

### A.  Insurers bear the burden to prove an exception or a limitation to an all-risks insurance policy applies.

Great Lakes, HDI Global, and Certain Underwriters all agree the Mall purchased policies covering "All Risks of Direct Physical Loss or Damage," with certain limitations and exclusions for each policy.[29] Judge Lewis ordered the parties to submit supplemental briefing addressing who bears the burden of proof in cases involving all-risks insurance policies under Virgin Islands common law.[30] We find insurers bear the burden to prove an exception or a limitation to an all-risks insurance policy applies.

#### 1.  The majority rule placing the burden on insurers to show an exception or a limitation to an all-risks insurance policy is the best rule for the Virgin Islands.

The Mall argues the insured must first show a loss under the policy after which the burden shifts to the insurer to show the loss falls under an exclusion to the all-risks policy.[31] The Insurers

agree the insured has an initial burden to prove a loss and agree the burden then shifts back to an insurer to establish an exclusion to an all-risks policy.[32] But the Insurers go further and argue after an insurer establishes an exclusion, the burden shifts back to the insured to show an "exception" to the exclusion.[33] We agree insurers have the burden to establish an exclusion to an all-risks policy after an insured shows its loss, but decline to decide who bears the burden to establish an exception to an exclusion.

When the Virgin Islands Supreme Court has not addressed a common law rule we must analyze three factors before deciding which rule to adopt.[34] First, we must consider "whether any Virgin Islands courts have previously adopted a particular rule."[35] Second, we must determine "the position taken by a majority of courts from other jurisdictions."[36] Third, we must "identify[] the best rule for the Virgin Islands."[37] This process is called a *Banks* analysis based on a Virgin Islands Supreme Court's 2011 analysis in *Banks v. International Rental and Leasing Corp.*[38] The Virgin Islands Supreme Court has not yet addressed the burden of proof for all-risks insurance policies. We must analyze the three *Banks* factors to determine the best rule for the Virgin Islands.

First, two Virgin Islands judges addressed the burden of proof for all-risks insurance policies before *Banks*. Both held insurers have the burden to prove an exclusion to a policy applies. Judge Finch first addressed the burden of proof for all-risks insurance policies in 1981.[39] Judge Finch adopted the "rule in most jurisdictions" and held "an 'all risks' insured need only prove loss or damage to the insured property" before the burden shifts "to the insurer to prove that the loss arose from a cause that is excluded under the policy."[40] Almost two years later the Virgin Islands Territorial Court addressed the burden of proof for an all-risks insurance policy.[41] Citing Judge Finch's reasoning, the Territorial Court found once the insured shows "a loss has occurred" the burden shifts to the insurer to show it is not liable because "the loss is a result of a cause which is

5

excepted under the policy."[42] Judges' pre-*Banks* analyses agreed the burden shifts to insurers to show an exclusion to an all-risk policy after an insured shows it suffered a loss.

Second, the majority of judges in other jurisdictions agree insurers have the burden to prove an exclusion to coverage under an all-risks insurance policy.[43] The Insurers argue a policy limitation like the Windstorm sub-limit is different from a policy exclusion.[44] But Insurers also bear the burden of proof to show a limitation to coverage.[45]

Third, we find the majority rule is the best rule for the Virgin Islands. Insurers who deny coverage under an all-risks insurance policy may plead an exclusion or limitation as an affirmative defense.[46] The party raising an affirmative defense has the burden of proving it.[47] We find the party seeking a declaratory judgment on an affirmative defense should also bear the burden. We cannot discern why an insurer should avoid the burden because they filed first seeking declaratory relief rather than raising the exclusion or limitation as a defense if the insured filed first. Because denying coverage based on an exclusion or limitation is often an affirmative defense, we conclude the best rule for the Virgin Islands is the majority one: insureds under an all-risk policy have the burden to show they suffered a covered loss, after which the burden shifts to the insurers to show an exclusion or limitation to coverage applies. We do not today define the trial presentations under Rule 611 but confirm the Mall will bear the burden to prove vandals and Hurricane Maria damaged the Mall, after which the Insurers will bear the burden to prove the Windstorm limitations and exclusion apply.

### 2. We decline to decide whether the burden shifts back to an insured to prove an exception to an exclusion.

The Insurers argue if they prove an exclusion applies the burden shifts back to the insureds to show an exception to the exclusion restores coverage.[48] The Mall responds the burden does not shift back to it under the facts before us.[49] An exception to an exclusion "restor[es] coverage that

6

would otherwise have been lost" through an exclusion.[50] There is a "trend . . . to place the burden on insureds to prove" an exception to an exclusion applies.[51] But we need not decide whether the burden shifts back to insureds to prove an exception to an exclusion under an all-risks policy because the policies with Windstorm limitations and the policy with a Windstorm exclusion do not include exceptions to the limitations or exclusion.

We follow the plain meaning of a contract's terms when its language is "clear and unambiguous."[52] Two of the policies at issue include Windstorm limitations to coverage: the Great Lakes policy and the HDI Global policy. The Great Lakes policy covers "All Risks of Direct Physical Loss or Damage including Windstorm . . . Insurance" up to $18,200,000 with a $3,250,000 sub-limit for "any one occurrence in respect of Windstorm."[53] The HDI Global policy also covers "All Risks of Direct Physical Loss or Damage including Windstorm . . . Insurance" up to $18,200,000 with a $3,250,000 sub-limit for "any one occurrence in respect of Windstorm."[54] The Certain Underwriters excess policy also includes a Windstorm exclusion to coverage.[55] The plain language of these policies show none of them includes an exception to the Windstorm limitations or exclusion. We do not need to decide the rule in the Virgin Islands for whether the insured or the insurer bears the burden to prove an exception to an exclusion or limitation because none of the policies at issue here include exceptions to the Windstorm limitations or exclusion.

### 3.  We cannot resolve causation on a summary judgment record.

We hold the Insurers have the burden to show the Windstorm coverage limitations and exclusion apply to the Mall's damages. But the Insurers and the Mall also advance arguments regarding how to determine what caused the Mall's damages. The Insurers argue we should apply an "efficient proximate cause doctrine" over a "concurrent cause doctrine" so only the "dominant" cause of the loss is covered.[56] They make their arguments without conducting a *Banks* analysis.[57]

7

The Mall does not state which rule should apply in the Virgin Islands and instead argues its loss is covered under either approach.[58]

But we need not decide whether the efficient proximate cause approach or the concurrent cause approach applies at this time. As discussed below, regardless of which approach we apply there is a genuine dispute of material fact regarding whether vandalism caused the Mall's damages precluding summary judgement.[59] We give the parties leave to address the best causation standard for the Virgin Islands based on a *Banks* analysis as part of final pretrial review.

### B. We find genuine disputes of material fact regarding whether the Windstorm limitations and exclusion caps the Mall's coverage.

The Insurers ask us to grant summary judgment and argue there is no evidence showing vandals breached one of the Mall's doors before Hurricane Maria hit.[60] The Mall directs us to three main sources it claims show the breach occurred before the storm: (1) Hatim Yusuf's testimony, (2) Dennis Link's testimony and expert report, and (3) Amy Peevey's testimony and expert report.[61] Judge Lewis excluded Ms. Peevey's testimony and report on September 30, 2022.[62] We thus only address whether Mr. Yusuf's testimony and Mr. Link's testimony and expert report could be admissible at trial and support the Mall's claim vandals breached a door before Hurricane Maria hit. Mr. Yusuf's testimony is admissible and creates a genuine dispute of material fact regarding whether the breach occurred before Hurricane Maria precluding summary judgment.

### 1. Mr. Yusuf's testimony creates a genuine dispute of material fact regarding whether vandals breached the Mall before Hurricane Maria.

The Insurers argue Mr. Yusuf's testimony explaining vandals breached the Mall's door before Hurricane Maria is inadmissible because it is an "irrelevant and inadmissible opinion[] of a lay witness."[63] The Mall does not explain why Mr. Yusuf's testimony is admissible. But we still find Mr. Yusuf's testimony is admissible and subject to review today. Mr. Yusuf's testimony creates a genuine dispute of material fact regarding whether vandals breached the Mall's door

8

before Hurricane Maria and precludes summary judgment. The Insurers have not shown the absence of a genuine dispute of material fact regarding the cause of the Mall's damages.

We can consider evidence at summary judgment if its contents are admissible, even if the current form is inadmissible.[64] A "lay witness" can give his opinion if three requirements are met: (1) the opinion is "rationally based on the witness's perception[,]" (2) the opinion is "helpful to clearly understanding the witness's testimony or to determining a fact in issue[,]" and (3) the opinion is "not based on scientific, technical, or other specialized knowledge within the scope of" expert witness testimony as described in Federal Rule of Evidence 702.[65] First, a witness's opinion testimony is rationally based on his perception if he has "firsthand knowledge" of the facts forming the basis for his opinion and if those facts "provide a truly rational basis for [his] opinion."[66] Second, a witness's opinion testimony is helpful if the witness's opinion is based on his "experience or specialized knowledge" and clarifies "an issue that the jury would not otherwise be competent to understand."[67] Third, even though a lay witness's opinion should be based on his experience or specialized knowledge, he cannot base his opinion on knowledge so specialized it can only "be mastered . . . by specialists in the field."[68] The party offering lay witness testimony bears the burden of showing it meets Rule 701's requirements.[69]

Mr. Yusuf swore unidentified persons vandalized the Mall's door before Hurricane Maria hit.[70] He did not observe them vandalizing the door. He instead determined vandals breached the door before Hurricane Maria when he inspected the Mall after the storm.[71] Mr. Yusuf concluded vandalism before the storm contributed to the damage based on his "experience with the building and past storms and hurricanes and how the building performed" and based on "the type of damage that was there" after Hurricane Maria.[72]

9

Mr. Yusuf's testimony satisfies Rule 701's requirements. Mr. Yusuf based his opinion on his personal observation of the Mall after Hurricane Maria. He also based his opinion on his experience with the Mall and how it weathered previous hurricanes. His experience with the Mall is not specialized. The Insurers can address their concerns with the credibility of Mr. Yusuf's testimony through cross-examination.[73] Mr. Yusuf's testimony could be admissible at trial and we thus consider it when resolving Great Lakes and HDI's Motion for summary judgment.

We deny summary judgment. The Insurers have not shown the cause of the Mall's damages is undisputed. Mr. Yusuf's testimony creates a dispute over whether vandalism before Hurricane Maria caused the Mall's damages. We cannot determine whether the Windstorm limitations in the Great Lakes and HDI Global policies or the Windstorm exclusion in the Certain Underwriters excess policy apply when there is a dispute of fact regarding what caused the Mall's damages.

### 2. We do not today decide the admissibility of Mr. Link's report and testimony.

The Insurers also argue we cannot consider Dennis Link's pre-litigation report and his testimony.[74] We question whether Mr. Link's report and testimony will be admissible at trial. But we decline to address this issue today because Mr. Yusuf's testimony creates a genuine dispute of material fact regarding the cause of the Mall's damages. The insurers can challenge his testimony *in limine* or during trial.[75]

### III.   Conclusion

We find a genuine dispute of material fact regarding the cause of the Mall's damages. We deny summary judgment for the Insurers.

---

[1] We find a genuine dispute of material fact precludes summary judgment. We provide background information to give context for our analysis. Citations to ECFs 102–04, ECFs 123–24, ECF 136 and ECF 196–97 are to *Certain Underwriters at Lloyd's, London Subscribing to Policy Numbers B1230GP00647B17 and B1230GP00647C17 v. Sunshine Shopping Ctr., Inc.*, No. 20-00033

(D.V.I. filed July 23, 2020). The remaining citations are to *Great Lakes Insurance S.E. v. Sunshine Shopping Ctr., Inc.*, No. 19-00039 (D.V.I. filed Aug. 16, 2019).

[2] *See* ECF 228 ¶¶ 1–5; ECF 249 ¶¶ 1–5; ECF 104 ¶¶ 1–5; ECF 123 ¶¶ 1–5.

[3] *See* ECF 228 ¶¶ 1–5; ECF 249 ¶¶ 1–5; ECF 104 ¶¶ 1–5; ECF 123 ¶¶ 1–5.

[4] *See* ECF 228-12 at 2 (Great Lakes Policy); ECF 228-13 at 2 (HDI Policy); ECF 104-1 at 10 (Certain Underwriters Primary Policy); ECF 104-2 at 3 (Certain Underwriters Excess Policy). The full definition for Windstorm is: "[A] tropical cyclone with minimum sustained winds near the surface of [thirty-nine] miles per hour or more as at the National Meteorological Office nearest the Covered Location which is damaged. A sustained wind speed is that which is measured as an average speed over at least a single continuous minute, and is specifically not a 'gust' measurement; such terminology in accordance with the Saffir-Simpson scale. Measurement of the wind speed is to be performed by the National Meteorological Office nearest the Covered Location that is damaged." *See* ECF 228-12 at 2; ECF 228-13 at 2; ECF 104-1 at 10; ECF 104-2 at 3.

[5] *See* ECF 228-12 at 1; ECF 228-13 at 1.

[6] *See* ECF 228-12 at 1; ECF 228-13 at 1.

[7] *See* ECF 228-12 at 1; ECF 228-13 at 1.

[8] *See* ECF 228 ¶ 4; ECF 249 ¶ 4.

[9] *See* ECF 104-1 at 9; ECF 104-2 at 2.

[10] *See* ECF 104-1 at 9.

[11] *See* ECF 104 ¶ 3; ECF 123 ¶ 3.

[12] *See* ECF 104-2 at 2.

[13] *See* ECF 104 ¶ 4; ECF 123 ¶ 4.

[14] *See* ECF 104-2 at 2.

[15] *Cf.* ECF 228 ¶ 4; ECF 249 ¶ 4; ECF 104-1 at 1 n.1, 2 (including an illustration suggesting Certain Underwriters subscribed to the remaining 45%).

[16] *See* ECF 228 ¶ 7; ECF 249 ¶ 7; ECF 104 ¶ 7; ECF 123 ¶ 7.

[17] *See* ECF 228 ¶¶ 14–16; ECF 249 ¶¶ 14–16; ECF 104 ¶¶ 14–16; ECF 123 ¶¶ 14–16.

[18] *See* ECF 228 ¶¶ 9, 11; ECF 123 ¶¶ 9, 11; ECF 104 ¶¶ 9, 11; ECF 123 ¶¶ 9, 11.

[19] *See* ECF 228 ¶ 8; ECF 249 ¶ 8; ECF 104 ¶ 8; ECF 123 ¶ 8.

[20] *See* ECF 228 ¶¶ 13, 40 (suggesting Windstorm damages exceeded $5,600,000 and providing an estimate for Windstorm damages for $10,463,898.45); ECF 249 ¶¶ 13, 40; ECF 104 ¶¶ 38–39 (providing several estimates for the Mall's damages over $10,000,000); ECF 123 ¶¶ 38–39; *see also* ECF 1 ¶¶ 7–9 (showing Great Lakes alleges the Mall's most recent request exceeded $12,000,000); ECF 1 ¶ 9 (showing Certain Underwriters alleges the Mall's most recent request exceeded $12,000,000).

[21] *See* ECF 228 ¶¶ 9–13; ECF 249 ¶¶ 9–13; ECF 104 ¶¶ 9–13; ECF 123 ¶¶ 9–13.

[22] *See* ECF 228 ¶ 13; ECF 249 ¶ 13; ECF 104 ¶ 13; ECF 123 ¶ 13.

[23] *See* ECF 228 ¶ 41; ECF 249 ¶ 41.

[24] *See* ECF 1 (Great Lakes).

[25] *See* ECF 1 (Certain Underwriters).

[26] *See* ECF 226; ECF 102. Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is "genuine" if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). The "mere existence of a scintilla of evidence" favoring the non-moving party does not prevent summary judgment. *See SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). When determining whether a disputed fact is genuine, we draw all inferences in favor of the non-moving party. *See id.* We do not weigh evidence or make credibility determinations. *See Spivack v. City of Phila.*, 109 F.4th 158, 166 (3d Cir. 2024) (citing *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021)).The Supreme Court "outlined two closely related methods for a movant to succeed at summary judgment": (1) under the "standard approach," the moving party may produce material facts, genuinely undisputed, entitling it to judgment as a matter of law; and (2) under the "*Celotex* approach," the moving party "may instead demonstrate that the non-moving party has not made 'a showing sufficient to establish the existence of an element essential to that party's case . . . *on which that party will bear the burden of proof at trial.*" *See Mall Chevrolet, Inc. v. Gen. Motors LLC*, 99 F.4th 622, 630 (3d Cir. 2024) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A person moving for summary judgment can show a fact "cannot be . . . genuinely disputed" by showing the adverse party "cannot produce admissible evidence to support the fact." *See* Fed. R. Civ. P. 56(c)(1)(B); *see also* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").

[27] *See* ECF 314; *see also* ECF 316; ECF 318; ECF 319; ECF 320; ECF 321; ECF 322.

[28] *See* ECF 323; ECF 324; ECF 196; ECF 197.

[29] *See* ECF 228 ¶ 2; ECF 249 ¶ 2; ECF 228-12 at 1; ECF 228-13 at 1; *see also* ECF 104 ¶ 2; ECF 123 ¶ 2; ECF 104-1 at 9; ECF 104-2 at 2.

[30] *See* ECF 314.

[31] *See* ECF 316; ECF 320.

[32] *See* ECF 318; ECF 319; ECF 321; ECF 322.

[33] *See* ECF 318 at 7–12; ECF 319 at 7–10; ECF 321 at 11–13; ECF 322 at 2, 8–9. Certain Underwriters first argued the Mall had a "threshold burden of establishing that the two occurrences combined to cause a greater loss than the Mall would have sustained otherwise." *See* ECF 103 at 14. We disagree. Insureds only have to prove they suffered a loss under an all-risks policy; insurers have the burden to show the loss is excluded or limited.

[34] *See Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 756–57 (V.I. 2014).

[35] *See Gov't of the V.I. v. Connor*, 60 V.I. 597, 603 (V.I. 2014) (explaining this "requires [us] to ascertain whether any other local courts have considered the issue and rendered any reasoned decisions upon which litigants may have grown to rely").

[36] *See id.* (explaining this "directs [us] to consider all potential sides of an issue by viewing the potentially different ways that other states and territories have resolved a particular question").

[37] *See id.* (explaining this "mandates that [we] weigh all persuasive authority both within and outside the Virgin Islands, and determine the appropriate common law rule based on the unique characteristics and needs of the Virgin Islands.").

[38] *See id.* at 602–03 (citing *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011)).

[39] *See MacMary Corp. v. Mfrs. Tr. Ins. Co.*, 18 V.I. 570 (D.V.I. 1981)

[40] *See id.* at 574 (citing *Dow Chem. Co. v. Royal Indem. Co.*, 635 F.2d 379, 386 n.8 (5th Cir. 1981)).

[41] *See Vertichio v. Ennia Gen. Ins. Co.*, 20 V.I. 7 (V.I. 1983).

[42] *See id.* at 13 (citing *MacMary Corp.*, 18 V.I. 570 (1981)).

[43] *See* Couch on Ins. § 254:12 (3d ed. 2026) (collecting cases from Florida, Georgia, Hawai'i, Idaho, Illinois, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, New Hampshire, New Jersey, New York, North Carolina, North Dakota, Ohio, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, and West Virginia); Couch on Ins. § 254:15 (3d ed. 2026) (collecting cases specifically applying the burden-shifting framework to all-risks insurance policies); *see also,*

*e.g.*, *Strubble v. United Servs. Auto. Ass'n*, 110 Cal. Rptr. 828, 831–32 (Cal. Ct. App. 1973) (holding for an all-risks insurance policy the insurer must prove "the insured's loss was proximately caused by a peril specifically excluded from the coverage of the policy" because "it is denying liability upon the policy"); *Battishill v. Farmers Alliance Ins. Co.*, 127 P.3d 1111, 1113 (N.M. 2006) (stating insurers have the burden "to prove that the loss is not covered by evidence showing an exception, exclusion or other limitation applies" (quotation omitted)); *Nat'l Grange Mut. Ins. Co. v. Elegant Slumming, Inc.*, 59 A.3d 928, 932 & n.18 (Del. 2013) (noting an insurer has the burden to demonstrate a policy exclusion applies in property insurance coverage dispute); *Carlyle Inv. Mgmt., LLC v. Ace Am. Ins. Co.*, 131 A.3d 886, 898–97 (D.C. 2016) (noting "[w]here an insurer attempts to avoid liability under" a liability insurance policy "on the ground that the loss for which recovery is sought is covered by some exclusionary clause, the burden is on the insurer to prove the facts which bring the case within the specified exception" (quoting *Cameron v. USAA Prop. & Cas. Ins. Co.*, 733 A.2d 965, 968 (D.C. 1999))); *Murphy Oil Corp. v. Liberty Mut. Fire Ins. Co.*, 955 F.3d 1110, 1113 (8th Cir. 2020) (applying Arkansas law and stating "[i]f an exclusion is at issue, the insurer has the burden to prove that an exclusion applies" (quoting *Ark. Farm Bureau Ins. Fed'n v. Ryman*, 831 S.W.2d 133, 135 (Ark. 1992))); *Huntington Ingalls Indus., Inc. v. Ace Am. Ins. Co.*, 287 A.3d 515, 524 (Vt. 2022) ("[O]nce coverage is shown, the insurer has the burden of proving any exceptions to coverage apply.").

[44] *See* ECF 321 at 5–9; ECF 322 at 4–7.

[45] *See* Couch on Ins. § 254:12 (3d ed. 2026) ("The insurer bears the burden of proving the applicability of policy exclusions *and limitations*[.]" (emphasis added)); *see also, e.g.*, *Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir. 1996) (explaining under Pennsylvania law "the insurer bears the burden of proving the applicability of any exclusions or limitations on coverage"); *Ind. Funeral Dirs. Ins. Tr. v. Trustmark Ins. Corp.*, 347 F.3d 652, 654 (7th Cir. 2003) (applying Indiana law and stating "the insurance provider bears the burden of proving specific exclusions or limitations to policy coverage"); *Addison Ins. Co. v. Fay*, 905 N.E.2d 747, 453–54 (Ill. 2009) ("Once the insured has demonstrated coverage, the burden then shifts to the insurer to prove that a limitation or exclusion applies."); *Battishill*, 139 N.M. at 26 (stating insurer has burden "to prove that the loss is not covered by evidence showing an exception, exclusion or other limitation applies" (quotation omitted)); *Jablonski v. Barton Mut. Ins. Co.*, 291 S.W.3d 345, 348 (Mo. Ct. App. 2009) (stating insurer had burden to prove a limitation to a property insurance policy applied).

[46] *See* Couch on Ins. § 254:12 (3d ed. 2026) ("The insurer bears the burden of proving the applicability of policy exclusions and limitations or *other types of affirmative defenses*, in order to avoid an adverse judgment after the insured has sustained its burden and made its prima facie case." (emphasis added)); *see also, e.g.*, *Koppers Co., Inc.*, 98 F.3d at 1446 ("[T]he insurer bears the burden of proving the applicability of any exclusions or limitations on coverage, since disclaiming coverage on the basis of an exclusion is an affirmative defense."); *Evergreen Recycle, L.L.C. v. Ind. Lumbermens Mut. Ins. Co.*, 350 P.3d 1091, 1108 (Kan. Ct. App. 2015) ("An exclusion under an insurance policy is an affirmative defense . . . ."); *Keckler v. Meridian Sec. Ins. Co.*, 967 N.E.2d 18, 22–23 (Ind. Ct. App. 2012) ("Generally, when an insurer wishes to rely upon an exclusionary clause in its policy, it is raising an affirmative defense to coverage and it bears the burden of proving its applicability."); *Century Fire Sprinklers, Inc. v. CNA/Transp. Ins. Co.*, 23

14

S.W.3d 874, 877 (Mo. Ct. App. 2000) ("[A] defense based on an exclusion to an insurance policy is an affirmative defense, and the burden to establish the exclusion is on the insurer.").

[47] *Cf. Edward v. GEC, LLC*, 67 V.I. 745, 757 (V.I. 2017) ("[T]his Court has emphasized that affirmative defenses are all those which must be proven by the defendant[.]" (quoting *Pedro v. Ranger Am. of the V.I., Inc.*, 63 V.I. 511, 519 (V.I. 2015))).

[48] *See* ECF 318 at 7–10; ECF 319 at 7–9

[49] *See* ECF 320.

[50] *See* Couch on Ins. § 254:13 (3d ed. 2026).

[51] *See id.*

[52] *See Phillip v. Marsh-Monsanto*, 66 V.I. 612, 625 (V.I. 2017).

[53] *See* ECF 228-12 at 1.

[54] *See* ECF 228-13 at 1.

[55] *See* ECF 104-2 at 2 (covering "All Risks of Direct Physical Loss or Damage . . . excluding Windstorm Insurance").

[56] *See* ECF 227 at 12–18; ECF 262 at 14; ECF 103 at 15–19; ECF 136 at 5–9.

[57] *See* ECF 227 at 12–18; ECF 262 at 14; ECF 103 at 15–19; ECF 136 at 5–9.

[58] *See* ECF 250 at 15–20; ECF 124 at 15–19.

[59] *Cf.* Couch on Ins. § 148:62 (3d ed. 2026) (noting "[w]hether the insureds' loss was caused by, or concurrently contributed to, an excluded peril under an all-risks homeowners' policy is an issue for the jury . . . .").

[60] *See* ECF 227 at 10–12; ECF 262 at 2 n.2, 4–12; ECF 103 at 9–12; ECF 136 at 10–11.

[61] *See* ECF 249 ¶ 14 (citing Amy Peevey's May 27, 2021 Damages Causation Report*); id.* ¶ 15 (citing Amy Peevey's May 27, 2021 Damages Causation Report*); id.* (citing Dennis Link's May 22, 2018 Expert Report); *id.* (citing Amy Peevey's deposition*); id.* ¶ 16 (citing Dennis Link's deposition*); id.* ¶¶ 25–28 (citing Dennis Link's May 22, 2018 Expert Report and deposition*); id.* ¶¶ 29–34 (citing Amy Peevey's May 27, 2021 Damages Causation Report and deposition); *see also* ECF 228 ¶ 14 (citing Amy Peevey's deposition*); id.* ¶ 15 (citing Hatim Yusuf's deposition).

The Mall also directs us to other evidence showing it reported damage from looting without suggesting when a breach occurred. *See* ECF 249 ¶¶ 8–9, 14; ECF 250-1 (September 25, 2017 Hatim Yusuf Text Message); ECF 228-4 at 6 (October 30, 2017 Steve Cliff Report); ECF 247-3

15

(November 18, 2017 Proof of Loss Statement); *see also* ECF 228 ¶ 15; ECF 104-6 at 2–4 (September 23, 2017 Police Report). ¶

[62] *See* ECF 292; ECF 293; *see also* ECF 313.

[63] *See* ECF 227 at 12; ECF 103 at 11–12.

[64] *See Fraternal Ord. of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016) (instructing us to consider "hearsay statements . . . on a motion for summary judgment if they are *capable of being admissible at trial*" (quoting *Stelwagon Mfg. Co. v. Tarmac Roofing Sys.*, 63 F.3d 1267, 1275 n.17 (3d Cir. 1995))); *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014) (explaining if "the *content* of the evidence" could "satisfy the applicable admissibility requirements at trial[,]" even if the current form "is inadmissible at trial," we may consider it on summary judgment).

[65] *See* Fed. R. Evid. 701; *see also* Fed. R. Evid. 702 (instructing a qualified expert may give an opinion if "it is more likely than not that" (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[,]" (2) "the testimony is based on sufficient facts or data[,]" (3) "the testimony is the product of reliable principles and methods[,]" and (4) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case").

[66] *See United States v. Evans*, 175 F.4th 443, 451 (3d Cir. 2026) (quoting *Gov't of V.I. v. Knight*, 989 F.2d 619, 629 (3d Cir. 1993)) (explaining the witness must "have firsthand knowledge of the factual predicates that form the basis for the opinion"); *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1201 (3d Cir. 1995) ("Rule 701's requirement that the opinion be 'rationally based on the perception of the witness' demands more than that the witness [has] perceived something firsthand; rather, it requires that the witness's perception provide a truly rational basis for his or her opinion.").

[67] *See Evans*, 175 F.4th at 451 (emphasis removed) (first quoting *Asplundh Mfg. Div.*, 57 F.3d at 1201); and then quoting *United States v. Fulton*, 837 F.3d 281, 297 (3d Cir. 2016)). We cannot admit an opinion which "simply interpret[s] facts the jury is equally qualified to understand." *See id.* (citing *Fulton*, 837 F.3d at 292)).

[68] *See id.* (quoting Fed. R. Evid. 701 advisory committee's notes to 2000 amendment).

[69] *See Fulton*, 837 F.3d at 291.

[70] *See* ECF 229-1 at 2–3, 6, Yusuf Dep. at 92:9–93:10, 107:23–108:5.

[71] *See id.* at 2, Yusuf Dep. at 92:13–24.

[72] *See id.* He also based his conclusion on his intuition and "a gut feeling." *See id.* at 2–3, 6, Yusuf Dep. at 92:9–93:10, 107:23–108:5.

---

[73] *See* Fed. R. Evid. 701 advisory committee's note to 1972 proposed rules (explaining the rule "assumes that the natural characteristics of the adversary system will generally lead to an acceptable result, since the detailed account carries more conviction than the broad assertion, and a lawyer can be expected to display his witness to the best advantage. If he fails to do so, cross-examination and argument will point up the weakness"); *Asplundh Mfg. Div.*, 57 F.3d at 1195–96 (citing Fed. R. Evid. 701 advisory committee's note) ("Rule 701's liberalization of the admissibility of opinion evidence is rooted in the modern trend away from fine distinctions between fact and opinion and toward greater admissibility, tempered with an understanding that the adversary process, and more specifically, cross-examination will correct any problems[.]").

[74] *See* ECF 262 at 2 n.2, 5–7; ECF 136 at 12–13.

[75] We also do not address Certain Underwriters' argument it overpaid the Mall because it is not seeking reimbursement for an alleged overpayment. *See* ECF 102 at 2 n.2; ECF 103 at 19–21. We will address the extent to which Certain Underwriters wishes to argue alleged overpayment excuses it from making additional payments to the Mall before trial.